UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH A. JESKE,

                Plaintiff,                Civil Action No. 17-10144
                                                      Honorable John Corbett O'Meara
                                                      Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 15]**

Plaintiff Kenneth Jeske ("Jeske") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #14, 15), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Jeske is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (Doc. #15) be GRANTED, Jeske's Motion for Summary Judgment (Doc. #14) be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

**II.    REPORT**

    **A.    Procedural History**

On May 9, 2014, Jeske filed an application for DIB, alleging disability as of March 31, 2014. (Tr. 136-41). This application was denied initially on July 17, 2014. (Tr. 84-87). Jeske filed a timely request for an administrative hearing, which was held on February 9, 2016, before ALJ Brian Garves. (Tr. 34-73). Jeske, who was represented by attorney John Marosi, testified at the hearing, as did vocational expert Jessica Christensen. (*Id.*). On February 24, 2016, the ALJ issued a written decision finding that Jeske is not disabled under the Act. (Tr. 19-29). On December 22, 2016, the Appeals Council denied review. (Tr. 1-5). Jeske timely filed for judicial review of the final decision on January 17, 2017. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C.  Background

#### 1.  *Jeske's Reports and Testimony*

At the time of the administrative hearing, Jeske was 46 years old, and at 5'6" tall, weighed 210 pounds. (Tr. 41, 153). He was married and lived with his wife and two children. (Tr. 41, 164). He completed high school but had no further education. (Tr. 158). Previously, he worked as laborer and mechanic, even after undergoing two back surgeries (most recently in 2007). (Tr. 42-45, 158). However, he alleges he stopped working on March 31, 2014, when he reinjured his lower back while trying to lift a 60-pound bag of cement. (Tr. 42).

Jeske alleges disability primarily as a result of back pain (which radiates into his left leg), as well as neck pain and numbness (which radiates into his left shoulder). (Tr. 38, 51, 53, 157). He also testified that he suffers from irritable bowel syndrome ("IBS") and carpal tunnel syndrome. (Tr. 49, 60). At the time of the hearing, he had been wearing a splint on his right wrist "[o]n and off for a week or so." (Tr. 60). He can lift 15-20 pounds; stand for 5-15 minutes at a time; and sit for 10-15 minutes at a time. (Tr. 50, 52-53). Jeske is able to attend to his personal needs, care for his pets, do the dishes, drive, sweep, fold clothes, prepare meals, shop in stores, attend his children's sports activities, and visit his parents. (Tr. 52-53, 63, 165-68).

3

### 2. *Medical Evidence*

The Court has thoroughly reviewed Jeske's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *Vocational Expert's Testimony*

Jessica Christensen testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 65-71). The ALJ asked the VE to imagine a claimant of Jeske's age, education, and work experience who can lift no more than 10 pounds at a time (occasionally lifting or carrying articles such as docket files, ledgers, or small tools), sit for 6 hours in an 8-hour shift, and stand or walk for 2 hours in an 8-hour shift, with the following additional limitations: must alternate from sitting to standing for 10 minutes after every 30 minutes of sitting; can frequently, but not continuously, reach in all directions and overhead bilaterally; can frequently, but not continuously, handle and finger objects bilaterally; cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, crouch, and crawl; can frequently, but not continuously, balance, stoop, or kneel; and can tolerate occasional exposure to unprotected heights and moving machinery. (Tr. 67-68). The VE testified that the hypothetical individual would not be capable of performing Jeske's past relevant work. (*Id.*). However, the VE also testified that the hypothetical individual would be capable of working in the jobs of inspector (57,000 jobs nationally), surveillance system monitor (52,000 jobs), and charge account clerk (60,000 jobs). (Tr. 68).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Jeske is not disabled under the Act. At Step One, the ALJ found that Jeske has not engaged in substantial gainful

activity since March 31, 2014 (the alleged onset date). (Tr. 21). At Step Two, the ALJ found that he has the severe impairment of degenerative disc disease. (*Id.*). At Step Three, the ALJ found that Jeske's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 23).

The ALJ then assessed Jeske's residual functional capacity ("RFC"), concluding that he is capable of performing sedentary work, with the following limitations: must alternate from sitting to standing for 10 minutes after every 30 minutes of sitting; can frequently, but not continuously, reach in all directions and overhead bilaterally; can frequently, but not continuously, handle and finger objects bilaterally; cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, crouch, and crawl; can frequently, but not continuously, balance, stoop, or kneel; and can tolerate occasional exposure to unprotected heights and moving machinery. (Tr. 23).

At Step Four, the ALJ determined that Jeske is not capable of performing his past relevant work. (Tr. 28). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Jeske is capable of performing a significant number of jobs that exist in the national economy. (*Id.*). As a result, the ALJ concluded that Jeske is not disabled under the Act. (Tr. 29).

      **E.**    **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the ALJ's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently

and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F. Analysis**

*1. Jeske Has Shown No Error in the RFC Finding*

As set forth above, the ALJ found that Jeske can perform a limited range of sedentary work. (Tr. 23). Jeske now argues that, in formulating his RFC, the ALJ "down played the seriousness of the damage to [his] lumbar spine" and erred in discounting his subjective complaints. (Doc. #14 at 19, 22-24). For the reasons set forth below, the Court finds no merit to these arguments.

*a. The ALJ's Evaluation of Jeske's Back Impairment*

As the ALJ noted, Jeske presented to Tim Eckstein, D.O. on March 31, 2014, after he "felt something pop in his lower back" when lifting a bag of cement at work. (Tr. 265). A lumbar spine x-ray taken that day showed only postsurgical changes at L5-S1, with no complicating processes, and was otherwise unremarkable. (Tr. 238). He was diagnosed with a lumbar strain and limited to sit-down work for seven days. (Tr. 266-67). At a follow-up visit to Dr. Eckstein on April 7, 2014, Jeske reported continued pain in his lower back and indicated that his upper back was "starting to give him problems." (Tr. 260). His physical exam was generally normal, and he was advised to begin physical therapy. (Tr. 261). Two weeks later, Jeske reported "some improvement overall" with a current pain level of 2/10. (Tr. 250). But, at his next visit to Dr. Eckstein, on May 7, 2014, Jeske reported that he "overall ha[d] not improved"

7

and had discontinued physical therapy because he did not feel it was helping. (Tr. 244).

An MRI of Jeske's lumbar spine was performed on May 13, 2014, and showed degenerative disc space changes at L5-S1 with type II and type III discogenic changes in the adjacent L5 and S1 endplate and mild spondylitic compromise of the right L5 neural foramen. (Tr. 249). But, there was no focal disc herniation, compression fracture, or marrow edema. (*Id.*).

On May 29, 2014, Jeske saw Thomas Raymond, M.D. for a rehabilitation medicine consult. (Tr. 459-60). On examination, Jeske had full strength in the lower extremities, intact sensation, and a negative straight leg raising test. (Tr. 459). Dr. Raymond diagnosed a thoracolumbar strain with radicular symptoms to the left buttock and referred Jeske for a surgical consultation. (Tr. 459-60).

On July 8, 2014, Jeske saw Srinivas Chakravarthi, M.D., who had performed his 2007 back surgery, for evaluation. (Tr. 430-31). On examination, Dr. Chakravarthi observed no tenderness, normal gait, normal sensory and motor function, no neurological deficits, and a negative straight leg raising test. (Tr. 431). Dr. Chakravarthi assessed mechanical pain that was most likely muscular in nature, recommended six weeks of physical therapy, and indicated that no further follow-up was needed. (*Id.*).

On October 1, 2014, Jeske saw James Wessinger, M.D. for another surgical consultation. (Tr. 503-06). Dr. Wessinger observed that Jeske could heel and toe walk and had no back spasm, full motor power, intact sensation, a negative straight leg raising test, and no atrophy. (Tr. 504-05). X-rays showed no significant findings. (Tr. 505). Dr. Wessinger further noted that physical and neurological examinations were normal and that Jeske had likely strained his lumbar region in March. (Tr. 506). He found no need for further treatment, other than over-the-counter anti-inflammatory medication, and noted that he would not restrict Jeske. (*Id.*).

Throughout 2015, Jeske received treatment at Bangor Medical Center, where he reported neck and back pain, and providers often noted tenderness and decreased range of motion. (Tr. 532-34, 539, 563-64). In May 2015, an MRI of Jeske's cervical spine showed bulging at C3-C4 and C5-C6, with no herniation, central canal stenosis, or nerve root impingement. (Tr. 298). An MRI of Jeske's lumbar spine taken one month later showed moderate to severe right foraminal stenosis at L5-S1 but otherwise no disc protrusion, herniation, or stenosis. (Tr. 301).

In October 2015, Frank Schinco, M.D. observed good range of motion in Jeske's neck without spasm or tenderness, good range of motion in the lumbar spine without tenderness, no weakness or atrophy, normal tone, intact sensation and reflexes, and normal gait. (Tr. 593-94). He ordered an EMG of Jeske's upper and lower extremities, which was normal, with no evidence of neuropathy or radiculopathy. (Tr. 565). In December 2015, Dr. Schinco again observed good range of motion in the neck and lumbar spine without tenderness, no weakness or atrophy, normal tone, intact sensation and reflexes, and normal gait. (Tr. 566). He found no indication for surgical intervention and advised Jeske to continue using anti-inflammatory medications, heating pads, and hot showers for pain. (*Id.*).

In arguing that the ALJ "down played the seriousness of the damage to [his] lumbar spine," Jeske first points to the May 2014 and June 2015 lumbar spine MRI findings, claiming that the ALJ found "these radiologic abnormalities were inconsequential." (Doc. #14 at 19). This is simply incorrect: the ALJ specifically considered these MRI reports and accurately summarized their findings. (Tr. 24-25, 26). Nowhere did the ALJ characterize Jeske's spine abnormalities as "inconsequential"; rather, he specifically found that Jeske's degenerative disc disease was a severe impairment, which limited him to less than the full range of sedentary work. (Tr. 21, 23). Because Jeske has not shown how these MRI results undermine the RFC finding,

he has shown no error. *See Randolph v. Comm'r of Soc. Sec.*, 2016 WL 7206711, at \*6 (E.D. Mich. Aug. 6, 2016) (finding no error in the RFC finding where the plaintiff cited only evidence the ALJ specifically considered, and failed to "show how these studies establish[ed] that his ability to stand or walk was more limited than the ALJ found").[1]

Finally, to the extent Jeske contends that the ALJ should have found separate, additional impairments of "chronic pain" and/or "failed back surgery syndrome" (Doc. #14 at 22), he again fails to show error in the ALJ's RFC finding. The only diagnosis of "failed back surgery syndrome" Jeske identifies (*Id.* at 20-21) comes from a nurse practitioner (Tr. 488), who is not an acceptable medical source and therefore could not establish the existence of an additional impairment. *See Soc. Sec. Rul. ("SSR") 06-03p*, 2006 WL 2329939, at \*1-2 (Aug. 9, 2006) (nurse practitioners are non-acceptable medical sources, and only acceptable medical sources can establish the existence of a medically determinable impairment) (citing 20 C.F.R. § 404.1527(a)(2)).[2] Nor does the symptom of pain necessarily establish an additional impairment.

---

[1] In challenging the ALJ's RFC finding, Jeske also summarizes a January 2016 RFC form completed by James Knight, P.A., in which Mr. Knight opined that Jeske could not sit, stand, or walk without severe pain, could not lift any weight, and would miss work three or more times per month. (Doc. #14 at 21 (citing Tr. 584-86)). Jeske then notes that the ALJ "accorded little weight" to this opinion. (*Id.*). However, Jeske does not argue that the ALJ erred in evaluating this opinion, so any such challenge is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted). Moreover, the ALJ did, in fact, give good reasons for discounting Mr. Knight's opinion – namely, that his findings were not consistent with the medical evidence of record, and that he "seemed to uncritically accept as true most, if not all" of Jeske's subjective reports of symptoms and limitations. (Tr. 27). These were acceptable reasons for discounting Mr. Knight's opinion. *See Pinkett v. Comm'r of Soc. Sec.*, 2016 WL 5369611, at \*9 (E.D. Mich. Sept. 26, 2016) (upholding the ALJ's decision to give no weight to the opinion of a non-acceptable medical source because the opinion was inconsistent with the evidence of record and based largely on the claimant's subjective complaints).

[2] The Social Security Administration amended certain regulations, effective March 27, 2017, including by broadening the scope of acceptable medical sources to include advanced practice registered nurses, audiologists, and physician assistants. *See* 20 C.F.R. § 404.1502(a), (d), and

10

*See* 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms."). In sum, Jeske has not identified any credible evidence of additional limitations stemming from his back impairment – or from his alleged chronic pain or failed back surgery syndrome – and, therefore, he has shown no error in the ALJ's RFC finding.

b. *The ALJ's Evaluation of Jeske's Subjective Complaints*

Jeske also argues that the ALJ erred in finding his allegations of disability less than fully credible. (Doc. #14 at 22-24). Courts have recognized, however, that determinations of credibility related to a claimant's subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). When a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must then consider other evidence of pain, including (1) daily activities; (2) location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, received; (6) any means used to relieve pain; and (7) other factors concerning functional limitations. *See* 20 C.F.R. §404.1529(c)(3).

Here, in concluding that Jeske was less than fully credible, the ALJ properly considered

---

(e). Jeske does not argue that these regulations govern the ALJ's 2016 decision, however, and the presumption is against retroactive application. *See, e.g., Amir v. Comm'r of Soc. Sec.*, 2017 WL 4570577, at *2-3 (6th Cir. Oct. 13, 2017) (applying regulations in effect at the time of the ALJ's decision). The Court will cite to the regulations in effect at the time of the ALJ's decision.

these factors, as summarized below:

- The ALJ found that Jeske's daily activities – which included going for walks, doing home exercises, preparing meals, performing certain household chores, driving, grocery shopping, and attending his children's sports activities – were "not limited to the extent one would expect" given his complaints of disabling symptoms and limitations. (Tr. 26 (citing Tr. 165-68)).

- The ALJ discussed the frequency and intensity of Jeske's back pain, noting that his "self-reported pain levels have been relatively low despite his allegations of severe symptoms …." (Tr. 26 (citing Tr. 246 (pain level 2/10), 288 (pain level 2-3/10), 430 (pain level 2/10), 486 (pain level 3/10)).

- The ALJ also properly considered the treatment Jeske received, as well as the means he used to relieve pain, noting that his physicians determined he was not a candidate for surgery or injections and, overall, his treatment was conservative. (Tr. 27 (citing Tr. 431 (no further follow-up needed), 506 (finding "no need for invasive treatment such as injections or surgery"), 566 (finding no need for surgery and recommending only anti-inflammatory medications and heat for Jeske's pain)). *See, e.g.*, *Al-Jalham v. Comm'r of Soc. Sec.*, 2016 WL 4771352, at *1 (E.D. Mich. Sept. 14, 2016) (noting that it was appropriate for the ALJ to consider the claimant's "conservative treatment history" in assessing his credibility).

- The ALJ considered other factors, reasonably noting that Jeske's testimony that pain affected his ability to concentrate (Tr. 63-64) was inconsistent with his prior report denying any difficulty concentrating or following instructions (Tr. 169). (Tr. 26). This inconsistency was an appropriate consideration. *See SSR 96-7p*, 1996 WL 374186, at *5 (July 2, 1996).[3]

Thus, the reasons the articulated for discounting Jeske's subjective complaints are supported by substantial evidence.

### 2. *Substantial Evidence Supports the ALJ's Finding that IBS was not a Medically Determinable Impairment*

Jeske also argues that the ALJ's failure to find his IBS a severe impairment was

---

[3] SSR 96-7p was superseded by SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), which became effective on March 28, 2016. Because SSR 96-7p was in effect on the date of the ALJ's February 24, 2016 decision, the Court references this earlier ruling in its analysis. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[A]dministrative rules will not be construed to have retroactive effect unless their language requires this result."). Moreover, separate and apart from any "credibility" issues, Jeske's prior report denying problems with concentration is part of the substantial evidence which supports the ALJ's RFC.

"additional error." (Doc. #14 at 21). The ALJ specifically considered Jeske's hearing testimony that he has "six to eight stools per day" and that "this condition started approximately six months before the hearing." (Tr. 22, 49). The ALJ then stated:

> There is not a valid diagnosis of irritable bowel syndrome of record. James Knight, PA diagnosed the claimant with the disorder, but because Mr. Knight is not an acceptable medical source as defined by 20 CFR 404.1502 and 416.902, he cannot establish the existence of medically determinable impairments[.]

(Tr. 22). The ALJ's analysis was correct. The regulations in effect at the time of the ALJ's decision required "evidence from acceptable medical sources to establish whether [a claimant] h[as] a medically determinable impairment[]." 20 C.F.R. § 404.1513(a). As a physician's assistant, Mr. Knight was not an acceptable medical source. *See* 20 C.F.R. § 404.1513(d)(1). Thus, the ALJ properly explained that Mr. Knight's diagnosis of IBS was insufficient to establish a medically determinable impairment. (Tr. 22). Jeske does not challenge the ALJ's analysis in this respect, pointing only to his own complaints of stomach pain and bowel movements. (Doc. #14 at 21-22). Again, however, a physical impairment must be established by medical evidence, not only an individual's statement of symptoms. *See* 20 C.F.R. § 404.1508. As such, Jeske has demonstrated no error in the ALJ's failure to find his IBS to be a severe impairment.

> 3. *Substantial Evidence Supports the ALJ's Finding that Jeske Can Perform a Significant Number of Jobs in the National Economy*

Finally, Jeske argues that the ALJ's RFC finding and the hypothetical question he posed to the VE are "incongruous," rendering the ALJ's reliance on the VE's testimony flawed. (Doc. #14 at 16-18). As set forth above, the ALJ asked the VE to imagine a claimant of Jeske's age, education, and work experience who can lift no more than 10 pounds at a time (occasionally lifting or carrying articles such as docket files, ledgers, or small tools), sit for 6 hours in an 8-hour shift, and *stand or walk for 2 hours in an 8-hour shift*, with certain additional limitations.

(Tr. 67-68).

Jeske now claims that this hypothetical does not match the RFC finding because the ALJ did not explicitly find that he retained the RFC to walk for up to two hours.[4] (Doc. #14 at 16-17). This argument misses the mark. In formulating Jeske's RFC, the ALJ specifically found that he can "perform sedentary work as defined in 20 CFR 404.1567(a)" (Tr. 23), which, by definition, requires occasional (*i.e.*, up to two hours of) walking and standing. *See* 20 C.F.R. § 404.1567(a); *see also SSR 96-6p*, 1996 WL 374185, at *3 (July 2, 1996) (explaining that sedentary work generally requires no more than two hours of standing and walking in an eight-hour work day). Thus, in finding that Jeske has the RFC to perform sedentary work, the ALJ implicitly found that he can stand or walk for up to two hours in an eight-hour work day. For this reason, there is no incongruity between the RFC finding and the hypothetical posed to the VE, and the VE's testimony constitutes substantial evidence to support the ALJ's finding that Jeske can perform a significant number of jobs that exist in the national economy. *See Brantley v. Comm'r of Soc. Sec.*, 637 F. App'x 888, 897 (6th Cir. 2016).

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion

---

[4] Jeske seems to suggest that the ALJ specifically omitted mention of walking in the RFC finding because the VE testified "that an individual would be off-task when walking." (Doc. #14 at 17). The Commissioner correctly characterizes this argument as a red herring. In response to a question from Jeske's attorney, the VE testified that a "sit, stand option" differs from a "sit, walk option" because a claimant who *has* to walk at certain intervals would have to walk away from the workstation, thus rendering him off-task during that time. (Tr. 69-70). But, the VE did not testify that a claimant with a sedentary RFC – that is, the capacity to stand or walk, as required by the job, for up to two hours in an eight-hour work day – would necessarily be off task whenever he is walking. (Tr. 67-70). Thus, Jeske has shown no error.

for Summary Judgment (Doc. #15) be GRANTED, Jeske's Motion for Summary Judgment (Doc. #14) be DENIED, and the ALJ's decision be AFFIRMED.

Dated: December 11, 2017　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 11, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
